**FILED**

JUN 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  05-219(PLF) |
| | : | |
| v. | : | |
| | : | |
| ROBERT X. CHAMBERS | : | **VIOLATIONS:** |
| | : | |
| Defendant. | : | **18 U.S.C. § 201(b)(2)(A) and (C)** |
| | : | **(Receipt of a Bribe by a Public Official)** |
| | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant Robert X. Chambers agrees and stipulates that the following facts are true:

The defendant Robert X. Chambers resided in West Chester, Pennsylvania and was the owner of Chambers and Sons (C&S), a hardwood flooring company, specializing in gymnasium flooring, located in Malvern, Pennsylvania.

The District of Columbia (D.C.) employee resided in Washington, D.C. and was employed as a General Engineer in the Capital Construction Services Division of the D.C. Office of Property Management (OPM).  He was a project manager who oversaw construction projects at the Department of Parks and Recreation (DPR) including two projects performed by C&S.  The duties of the D.C. employee included, but were not limited to the following:  a)  approving construction plans; b) overseeing contract performance by contractors; c) inspecting work on projects; and d) approving payments to contractors.

The D.C. employee's wife resided in Washington, D.C. with her husband.

RD was an accountant who resided and worked in Maryland.

BT Contractors (BT) was incorporated in Maryland on November 7, 2001, and was a general contractor providing construction services. The original directors of BT were the D.C. employee and his wife. In April 2002, the D.C. employee's wife was listed as the president and a director and the Maryland accountant was listed as the secretary and a director. In June 2002 the Maryland accountant was listed as a president, owner and stockholder.

Prior to July 2002 the defendant Robert X. Chambers made a sales call to the D.C. employees office located in Washington, D.C. The D.C. employee gave the defendant leads on upcoming D.C. contracts for recreation construction. The D.C. employee told the defendant to add $25,000 to his original contract bid. The D.C. employee told the defendant that he had to pay BT as a minority subcontractor in order to get the subcontract to install flooring for the D.C. government. The D.C. employee directed the defendant to make payments to BT after he had received each (final) payment from the general contractor. BT did no work as a sub contractor for C&S on the first project but the defendant made three payments to BT totaling $25,000 after C&S had completed work and had received final payment from the general contractor on July 2, 2002.

On a second D.C. project the D.C. employee told the general contractor that he needed to select C&S to install flooring. The D.C. employee told the defendant to add $13,500 to his original contract bid. The D.C. employee told the defendant that he needed to pay that part of the proceeds that C&S received to BT, even though, BT would only be inspectors on the second job. BT performed no work on this second project.

The D.C. employee helped the defendant get two D.C. jobs, helped the defendant deal with problems in getting paid by the contractors and got the defendant's floor specifications into a D.C. computer system which would be used as specifications for upcoming jobs, in order to get the

2

contract to provide flooring on two D.C. projects. The D.C. employee told the defendant that C&S had to pay money to BT, even though BT performed no work on the projects. The defendant became aware that the D.C. employee was receiving money from BT, when the D.C. employee advised the defendant when each government check had been mailed and on each occasion demanded "I want my money when you get the check". The defendant would FedEx the check to BT.

Chambers admitted that he inflated his bids on the two projects, at the request of the D.C. employee in order to pay BT who paid the D.C. employee.

Between July 10, 2002 through January 14, 2003, C&S sent eight checks totaling $38,500 to BT via FedEx. These same checks were deposited into a BT account and the Maryland account and paid $35,000 in United States currency to the D.C. employee. One or more of these cash payments were made in the District of Columbia.

The following table summarizes the checks submitted by C&S to BT bank account and cash to the D.C. Employee:

| Dates | Transaction | Amount |
|---|---|---|
| July 10-12, 2002 | C&S check deposited into BT account. All cash proceeds from C&S check provided to D.C. employee | $12,500 |
| September 6-11, 2002 | C&S check deposited into BT account. All cash proceeds from C&S check provided to D.C. employee | $7,000 |
| October 30, 2002 | C&S check deposited into BT account. Cash proceeds of $5,000 from C&S check provided to D.C. employee | $5,500 |
| November 18-27, 2002 | C&S check deposited into BT account. All cash proceeds from C&S check provided to D.C. employee | $5,000 |
| January 2, 2003 | C&S check deposited into BT account. Cash proceeds of $1,000 from C&S check provided to D.C. employee | $4,000 |
| January 8, 2003 | C&S check deposited into BT account. All cash proceeds from C&S check provided to D.C. employee | $3,000 |

3

| January 14, 2003 | C&S check deposited into BT account. Cash proceeds of $4,000 from C&S check provided to D.C. employee | $1,500 |
|---|---|---|

Mr. Chambers does not dispute that the government can establish beyond a reasonable doubt that C&S issued the above-mentioned checks totaling $38,500 payable to BT and that the Maryland accountant paid the D.C. employee 35,000 in cash from a BT company account.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar #451058

BY:     _Robert R. Chapman_

ROBERT R. CHAPMAN
D.C. Bar #60228
MICHELLE MEROLA
D.C. Bar #451-413
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 514-7788, (202) 353-4862

4

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney Joseph V. Catania, I agree and stipulate to this Statement of Offense.

6-21-05
_____
Date

_____
Robert X. Chambers

I have discussed this Statement of Offense with my client, Robert X. Chambers. I concur with his decision to stipulate to this Statement of Offense.

6/21/05
_____
Date

_____
Joseph V. Catania
Attorney for Robert X. Chambers