UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case Number 05-219 (PLF) |
| | : | |
| v. | : | |
| | : | |
| **ROBERT X. CHAMBERS** | : | |

### GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE

The United States of America, by and through undersigned counsel, respectfully submits this Motion for Downward Departure.

### BACKGROUND

On June 21, 2005, the defendant, Robert Chambers, pleaded guilty to one count of Conspiracy to Commit Bribery, in violation of 18 U.S.C. § 371.

The defendant owned a small hardwood flooring company, Chambers & Sons, that specialized in gymnasium flooring. The company was located in Malvern, Pennsylvania.

The defendant was interested in obtaining contracts with the District of Columbia government to build gymnasium floors for two recreation centers. The project manager for these centers was Narase Bob Oudit, who was employed by the Office of Property Management.[1] While holding his position at OPM, Oudit surreptitiously operated BT Contractors, a building contractor.

In late 2002 and early 2003, Oudit told Chambers that Oudit would not approve Chambers's bids unless Chambers inflated the bids by a total of $40,000, hired BT Contractors

---

[1] In the information in this case and in defendant's factual proffer, Oudit was identified as "DC employee." Oudit has since pleaded guilty, in Case Number 06-048, and is awaiting sentencing by the Court.

as a subcontractor, and paid BT Contractors this $40,000 for work that BT never performed. In accordance with Oudit's instructions, Chambers inflated one bid from $64,800 to $93,000 and the other bid from $55,000 to $70,000, and paid BT Contractors $38,500 for work that BT never performed. Chambers made the bribe payments in late 2002 and January 2003.[2]

Chambers was a willing bribe payer, and his payments to Oudit corrupted the contracting process. At the time that Oudit approached him, Chambers did not refuse the bribe demand, call the inspector general, or take any other appropriate action. Chambers is well off enough that if he had foregone these two contracts, obtained through bribes, he would hardly have been impoverished.

Nevertheless, as the factual proffer in this case and in Oudit's demonstrate, Oudit was clearly the driving force in these transactions. The bribes were not Chambers's idea; Oudit was the party that demanded them. Oudit is the far more culpable party in the Oudit-Chambers scheme.

## THE DEFENDANT'S COOPERATION

Defendant Chambers cooperated extensively in the investigation.

Chambers participated in two lengthy interviews with the FBI – one in November 2003 and one in March 2005. On both occasions, Chambers was truthful and provided useful information, much of which the government could not otherwise have learned.

Chambers also provided a number of documents corroborating the bribes that he paid. They included not just cancelled checks, but contemporaneous notes that made the Oudit-

---

[2]Oudit demanded bribes from two other contractors. Both of these contractors reported the incidents to Inspector General, and cooperated with the investigation. They were not charged.

Chambers financial transactions clearer. He also provided copies of his bids before and after he inflated them, as Oudit instructed. Chambers researched his transactions and provided documents and other information on an ongoing basis.

Chambers also testified before the grand jury.

Oudit pled guilty to Bribery, for his conduct with Chambers and with the two other contractors. Proving the Chambers part of Oudit's scheme would have been much more difficult without Chambers's cooperation. Realistically, the government would have had to prove a negative – that BT did not perform any work (or performed work not worth $38,500) for the money it received. Although this task is possible, it is much easier with a cooperator.

The government believes that Chambers's cooperation was an important factor in inducing Oudit to plead guilty.

## DOWNWARD DEPARTURE

According to the presentence report, the defendant's total offense level, after a reduction for acceptance of responsibility but before any downward departures, is 15. Both parties agree with this guidelines calculation.

The defendant's cooperation in this case "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. The government, therefore, moves that the Court reduce the defense level to 10, which is in Zone B of the Sentencing Guidelines.

Consistent with that offense level, the defendant's role in the offense, and the factors enumerated in 18 U.S.C. § 3553(a), the government is not seeking a sentence of incarceration in this case.

## CONCLUSION

Pursuant to § 5K1.1 of the Sentencing Guidelines, the government respectfully requests that the Court reduce the defendant's offense level to 10, and impose an appropriate sentence that does not include incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar Number 498610
United States Attorney

_____
HOWARD R. SKLAMBERG
D.C. Bar Number 453852
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20001

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by electronic mail upon G. Allen Dale, Esq., this 4th day of January, 2007.

_____
Howard R. Sklamberg